# EXHIBIT A

State Court of Fulton County
***EFILED***
LexisNexis Transaction ID: 17943283
Date: Jan 8 2008 4:14PM
Mark Harper, Clerk

Niall P. McCarthy (*nmccarthy@cpmlegal.com*)
Justin T. Berger (*jberger@cpmlegal.com*)
**COTCHETT, PITRE & McCARTHY**
San Francisco Airport Office Center
840 Malcolm Road, Suite 200
Burlingame, CA 94010
(650) 697-6000

Timothy M. O'Brien (Georgia Bar No. 548714)
**Levin, Papantonio, Thomas,**
**Mitchell, Echsner & Proctor, PA**
316 South Baylen Street, 6th Floor
Pensacola, FL 32502
Tel: (850) 435-7140
Fax: (850) 436-6140

Attorneys for *Qui Tam* Plaintiffs
[FILED UNDER SEAL]

# IN THE STATE COURT

## IN AND FOR FULTON COUNTY, GEORGIA

| | |
|---|---|
| STATE OF GEORGIA *ex rel.* [FILED UNDER SEAL], | Case No. CIV |
| Plaintiff, | **COMPLAINT FOR MONEY DAMAGES AND CIVIL PENALTIES FOR VIOLATIONS OF THE GEORGIA FALSE MEDICAID CLAIMS ACT** |
| vs. | |
| [FILED UNDER SEAL], | |
| Defendants. | |

**FILED UNDER SEAL**

**PURSUANT TO OCGA § 49-4-168.2(c)(2)**

LAW OFFICES
COTCHETT,
PITRE &
McCARTHY

COMPLAINT FOR MONEY DAMAGES AND CIVIL PENALTIES FOR VIOLATION OF THE
GEORGIA FALSE MEDICAID CLAIMS ACT

1   Niall P. McCarthy (*nmccarthy@cpmlegal.com*)
    Justin T. Berger (*jberger@cpmlegal.com*)
2   **COTCHETT, PITRE & McCARTHY**
    San Francisco Airport Office Center
3   840 Malcolm Road, Suite 200
    Burlingame, CA  94010
4   (650) 697-6000

5   Timothy M. O'Brien (Georgia Bar No. 548714)
    **Levin, Papantonio, Thomas,**
6   **Mitchell, Echsner & Proctor, PA**
    316 South Baylen Street, 6th Floor
7   Pensacola, FL 32502
    Tel: (850) 435-7140
8   Fax: (850) 436-6140

9   Attorneys for *Qui Tam* Plaintiffs
    HUNTER LABORATORIES, LLC and CHRIS RIEDEL
10

11                  **IN THE STATE COURT**

12          **IN AND FOR FULTON COUNTY, GEORGIA**

13

14  | | |
    |---|---|
    | STATE OF GEORGIA *ex rel.* HUNTER LABORATORIES, LLC and CHRIS RIEDEL, an individual, | Case No. |
    | | **COMPLAINT FOR MONEY DAMAGES AND CIVIL PENALTIES FOR VIOLATIONS OF THE GEORGIA FALSE MEDICAID CLAIMS ACT** |
    | Plaintiff, | |
    | vs. | |
    | QUEST DIAGNOSTICS INCORPORATED, a Delaware corporation; QUEST DIAGNOSTICS NICHOLS INSTITUTE, f/k/a QUEST DIAGNOSTICS, INC., a California corporation; QUEST DIAGNOSTICS CLINICAL LABORATORIES, INC., a Delaware corporation; LABORATORY CORPORATION OF AMERICA, a Delaware corporation; LABORATORY CORPORATION OF AMERICA HOLDINGS, a Delaware corporation; SPECIALTY LABORATORIES, INC., a California corporation; and Does 10 through 100, inclusive, | |
    | Defendants. | |

                    **FILED UNDER SEAL**

            **PURSUANT TO OCGA § 49-4-168.2(c)(2)**

LAW OFFICES
COTCHETT,
PITRE &
McCARTHY

---

**COMPLAINT FOR MONEY DAMAGES AND CIVIL PENALTIES FOR VIOLATION OF THE GEORGIA FALSE MEDICAID CLAIMS ACT**

# TABLE OF CONTENTS

Page Nos.

I.     **INTRODUCTION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **1**

II.    **OVERVIEW OF THE SCHEME** . . . . . . . . . . . . . . . . . . . . . . . . . . . **2**

III.   **PARTIES** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **4**

IV.    **THE COMMERCIAL LABORATORY BUSINESS** . . . . . . . . . . . . . . . . . . . . **7**

VII.   **MEDICAID OVERCHARGES BY LABCORP** . . . . . . . . . . . . . . . . . . . . **13**

VIII.  **MEDICAID OVERCHARGES BY SPECIALTY** . . . . . . . . . . . . . . . . . . . . **15**

IX.    **CAUSES OF ACTION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **17**

       **FIRST CAUSE OF ACTION**
       **(Against All Defendants)**
       **Georgia False Medicaid Claims Act, Presenting False Claims**
       **OCGA § 49-4-168.1(a)(1)** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **17**

       **SECOND CAUSE OF ACTION**
       **(Against All Defendants)**
       **Georgia False Medicaid Claims Act, Making or Using False Records or Statements**
       **To Obtain Payment or Approval of False Claims**
       **OCGA § 49-4-168.1(a)(2)** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **17**

X.     **PRAYER FOR RELIEF** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **18**

LAW OFFICES
COTCHETT,
PITRE &
MCCARTHY

**COMPLAINT FOR MONEY DAMAGES AND CIVIL PENALTIES FOR VIOLATION OF THE
GEORGIA FALSE MEDICAID CLAIMS ACT**

i

1    Plaintiff the STATE OF GEORGIA, by and through *Qui Tam* Plaintiffs HUNTER

2    LABORATORIES, LLC and CHRIS RIEDEL, alleges as follows:

## I.    INTRODUCTION

    1.    Georgia's Medicaid program is a crucial safety net for Georgians unable to afford health care. Intended to provide essential care for this State's growing indigent population, Medicaid funds are stretched to their limit. Too many times, the program has been subject to fraud and abuse by unscrupulous providers who have put profits above the public good. Funds that have been designated for essential services to the neediest Georgians have been diverted away because of false billing schemes. Those fraudulent schemes have threatened to diminish the quality of care, unnecessarily burdened taxpayers, and degraded the medical profession. This case is being brought to stop the rampant Medicaid fraud in the clinical laboratory industry, carried out over a period of years by the largest medical laboratory companies in the United States – years during which some of the Defendants were investigated, prosecuted and/or fined for other billing abuses.

    2.    That fraud has been knowingly perpetrated against a backdrop of unique, clearly defined regulations that require Medicaid providers to bill their *lowest* rates on services to Medicaid patients. Instead, these Defendants have habitually billed Medicaid some of their *highest* rates, deeply discounting many of their *private* fees to draw in lucrative Medicaid and other referrals. As but one example, the most commonly ordered laboratory test is an Automated Hemogram, for which the maximum Medicaid reimbursement rate is $9.77. One Defendant, Quest, has charged others as little as $1.42 for the same test. As a result, when the clinic refers a Medicaid patient to the laboratory for testing, Medicaid pays more than six times as much as the clinic pays for the identical service.

    3.    For some tests, rates have been discounted well below costs, and the laboratories cannot earn a profit on them. The Defendants nevertheless have an interest in keeping those private rates low, because it makes it essentially impossible for any new laboratories to gain a foothold in a large share of the market. To attract new business from customers who have been receiving deep discounts, prospective competitors must either match or beat those impossibly



LAW OFFICES
COTCHETT,
PITRE &
MCCARTHY

**COMPLAINT FOR MONEY DAMAGES AND CIVIL PENALTIES FOR VIOLATION OF THE
GEORGIA FALSE MEDICAID CLAIMS ACT**

1

low prices.  In other words, by using the publicly funded Medicaid program to subsidize private discounts, the larger and better established laboratories have cornered much of the market for themselves.

4.    This suit calls Defendants to answer for defrauding Georgia's taxpayers and compromising the welfare of Medicaid beneficiaries.

## II.    OVERVIEW OF THE SCHEME

5.    This is a *qui tam* action for violation of the Georgia False Medicaid Claims Act, OGCA § 49-4-168 *et seq.,* to recover treble damages, civil penalties and attorneys' fees and costs on behalf of the State of Georgia for fraudulent Medicaid billings.

6.    As will be discussed below, Defendants made false claims for payment of Medicaid-covered laboratory tests by falsely representing that the fees being charged were no greater than the maximum fees payable pursuant to Georgia regulations.  As participating Medicaid providers, Defendants were and are subject to Department of Community Health, Division of Medical Assistance (hereinafter, "Division") regulations that require them to provide services to Medicaid patients at their most favorable rates:

> As required by Divisional policy, providers ***must*** bill the Division their usual and customary fees.  ***"Usual and customary" means the lowest rate charged to private patients***, other third party payers and insurance carriers, health maintenance organizations or other members of the general public for comparable services.  The lowest rate includes any special price or discounts offered to such patients.  Providers must not change their fees to the upper limits in this schedule, even if these fees are higher than the maximum allowable payments for the services rendered.

Schedule of Maximum Allowable Payments for Clinical Laboratory and Anatomical Pathology Services (emphasis added).  Defendants were thus free to charge any other purchaser any fee for their services, so long as Medicaid obtained the best price available.

7.    Defendants' Medicaid Participation Agreements ("Statements of Participation") also made clear their duty to comply with Georgia law, including Division regulations.  Among other commitments, Defendants agreed to the following:

> Provider shall comply with all of the Department [of Community Health]'s requirements applicable to the category(ies) of service in which Provider participates . . . .

LAW OFFICES
COTCHETT,
PITRE &
MCCARTHY

---

**COMPLAINT FOR MONEY DAMAGES AND CIVIL PENALTIES FOR VIOLATION OF THE GEORGIA FALSE MEDICAID CLAIMS ACT**

2

. . . .

Provider shall submit claims for Covered Services rendered to eligible Medicaid recipients in the form and format designated by the Department. For each claim submitted by or on behalf of Provider, Provider shall certify each claim for truth, accuracy and completeness, and shall be responsible for research and correction of all billing discrepancies without cost to the Department.

. . . .

Payment shall be made in conformity with the provisions of the Medicaid program, applicable federal and state laws, rules and regulations promulgated by the U.S. Department of Health and Human Services and the State of Georgia, and the Department's Policies and Procedures manuals in effect on the date the service was rendered.

. . . .

Provider acknowledges that payment of claims submitted by or on behalf of Provider will be from federal and state funds, and the Department may withhold, recoup or recover payments as a result of Provider's failure to abide by the Department's requirements.

8.    Defendants have repeatedly defrauded the Medicaid program by billing the Division of Medical Assistance fees well in excess of their lowest rates.  Rather than abide by Division regulations and their Medicaid Participation Agreements, Defendants offered clinical laboratory services to private physicians, clinics, hospitals, independent physician associations ("IPAs"), group purchasing organizations ("GPOs"), other states' Medicaid programs, and other health care providers at fees deeply discounted below the maximum allowances provided under Medicaid's published fee schedule.  Those maximum allowances are only payable when the provider charges no lower fee, and charging any higher fee to the Division violates Medicaid regulations.

9.    In this lawsuit, Plaintiff demands treble damages, civil penalties of up to $11,000 for each false claim, and other relief provided by Georgia's False Medicaid Claims Act.

10.   Information personally known to *Qui Tam* Plaintiffs HUNTER LABORATORIES, LLC and CHRIS RIEDEL (together, "*Qui Tam* Plaintiffs") is the basis for this action.

///

///

LAW OFFICES
COTCHETT,
PITRE &
MCCARTHY

**COMPLAINT FOR MONEY DAMAGES AND CIVIL PENALTIES FOR VIOLATION OF THE GEORGIA FALSE MEDICAID CLAIMS ACT**    3

Page A-7

## III.   PARTIES

11.   The plaintiff in this action is the STATE OF GEORGIA ("the State" or "Georgia") by and through *Qui Tam* Plaintiffs HUNTER LABORATORIES, LLC and CHRIS RIEDEL. At all times material to this action, the Georgia Department of Community Health, Division of Medical Assistance ("Division") was an agency of the State and was solely responsible for the payment of Medicaid payments. The Division paid benefits from a combination of State and Federal Government funds. The Division provided Medicaid benefits to qualified recipients, which included payment of claims to Defendants for their laboratory tests. These claims were paid based upon Defendants' false representations that the fees being charged were calculated in accordance with applicable Medicaid regulations.

12.   *Qui Tam* Plaintiff HUNTER LABORATORIES, LLC ("HUNTER") is an affiliate of Hunter Laboratories, Inc., a California corporation that is engaged in the commercial reference laboratory business.

13.   *Qui Tam* Plaintiff CHRIS RIEDEL ("RIEDEL") is an individual engaged in the commercial reference laboratory business.

14.   Defendant QUEST DIAGNOSTICS INCORPORATED, f/k/a Corning Clinical Laboratories, Inc., f/k/a Met Path, Inc. ("QUEST-DE") (NYSE: DGX; Georgia Control No. K629716) is a Delaware corporation with its principal place of business at 1290 Wall Street West, Lyndhurst, New Jersey. At all times relevant hereto, QUEST-DE conducted business in the State of Georgia, including but not limited to providing clinical laboratory services to the general public in Georgia. Plaintiff sues QUEST-DE both based on conduct of QUEST-DE itself and in QUEST-DE's capacity as successor by merger or consolidation to each of the following:

(a)   Labone, Inc., f/k/a Lab Holdings, Inc., f/k/a Seafield Capital Corporation (Control No. K945254), a Missouri corporation presently headquartered at 1290 Wall Street West, Lyndhurst, NJ 07071 which Quest acquired on or about November 1, 2005, and which according to the *Washington G-2 Reports 2005 Laboratory Industry Strategic Outlook* was the third ranked independent laboratory after Quest and LabCorp at the time of the acquisition;

LAW OFFICES
COTCHETT,
PITRE &
MCCARTHY

**COMPLAINT FOR MONEY DAMAGES AND CIVIL PENALTIES FOR VIOLATION OF THE GEORGIA FALSE MEDICAID CLAIMS ACT**

4

1          (b)    AmeriPath, Inc., a Delaware corporation which Quest acquired on or

2 about May 31, 2007 and which has its principal place of business at 7111 Fairway Drive, Suite

3 400, Palm Beach Gardens, Florida 33418;

4          (c)    Specialty Laboratories, Inc., a California corporation whose principal place

5 of business is at 7111 Fairway Drive, Suite 400, Palm Beach Gardens, Florida 33418, which

6 became a wholly-owned subsidiary of Ameripath, Inc. on or about January 30, 2006 through a

7 merger with Silver Acquisition Corp., and which QUEST-DE acquired with its May 31, 2007

8 acquisition of AmeriPath; and

9          (d)    American Medical Laboratories, a Virginia corporation, which QUEST-

10 DE acquired on or about March 2002.

11      15.    Defendant QUEST DIAGNOSTICS NICHOLS INSTITUTE, f/k/a Quest

12 Diagnostics, Inc., f/k/a Corning Nichols Institute, Inc., f/k/a Corning Nichols Institute, f/k/a

13 Nichols Institute Reference Laboratories (Control No. J251727), f/k/a Nichols Institute

14 Laboratories, f/k/a Nichols Institute for Endocrinology ("QUEST-NICHOLS") is a California

15 corporation with its principal place of business at 1290 Wall Street West, Lyndhurst, New Jersey.

16 At all times relevant hereto, QUEST-NICHOLS conducted business in the State of Georgia.

17 QUEST-NICHOLS is a wholly-owned subsidiary of QUEST-DE.

18      16.    Defendant QUEST DIAGNOSTICS CLINICAL LABORATORIES, INC.

19 (Control No. J051415), f/k/a SmithKline Beecham Clinical Laboratories, Inc., f/k/a SmithKline

20 Bioscience Laboratories, Inc., f/k/a SmithKline Clinical Laboratories, Inc., f/k/a Laboratory

21 Procedure, Inc. ("QUEST CLINICAL") is a Delaware corporation with its principal place of

22 business at 1290 Wall Street West, Lyndhurst, New Jersey.  At all times relevant hereto, QUEST

23 CLINICAL conducted business in the State of Georgia, including but not limited to providing

24 clinical laboratory services to the general public in Georgia.  QUEST CLINICAL is the

25 successor-by-merger to Nichols Institute, f/k/a Nichols Institute Northeast, Inc., f/k/a Nichols

26 Institute for Endocrinology, and is a wholly-owned subsidiary of Quest Diagnostics Holdings

27 Incorporated, a wholly-owned subsidiary of QUEST-DE.

28

LAW OFFICES
COTCHETT,
PITRE &
MCCARTHY

**COMPLAINT FOR MONEY DAMAGES AND CIVIL PENALTIES FOR VIOLATION OF THE
GEORGIA FALSE MEDICAID CLAIMS ACT**

5

17.     As used herein, "QUEST" means and includes, individually and collectively, QUEST-DE; QUEST-NICHOLS; QUEST CLINICAL; and SPECIALTY as to events occurring on or after May 31, 2007. *Qui Tam* Plaintiffs sue the QUEST entities, and each of them, as participants, alter egos of one another, agents of one another, aiders and abettors of one another, and conspirators with one another in the improper acts, plans, schemes, and transactions that are the subject of this Complaint.

18.     *Qui Tam* Plaintiffs are informed and believe that QUEST is one of the largest commercial reference laboratory in Georgia, and that it operates over 31 patient service centers and other facilities in the State of Georgia.  Among other Georgia locations, QUEST operates patient service centers in Fulton County at 315 Boulevard NE, Suite 240, Atlanta, Georgia 30312; 550 Peachtree Street NE, Suite 1050, Atlanta, Georgia, 30308; and 5555 Peachtree Dunwoody Road NE, Suite 120, Atlanta, Georgia, 30342.

19.     Defendant LABORATORY CORPORATION OF AMERICA, f/k/a National Health Laboratories, d/b/a Laboratory Corp of America (Control No. H857587) ("LABCORP") is a Delaware corporation that operates clinical laboratory facilities throughout the United States. At all times relevant hereto, LABCORP was and is conducting business in the State of Georgia. Among other locations within the State of Georgia, LABCORP has patient service centers in Fulton County at 285 Boulevard NE, Suite 215, Atlanta, Georgia, 30312; 550 Peachtree Street NE, Suite 1650, Atlanta, Georgia, 30308; and 1938 Peachtree Road NW, Suite 408, Atlanta, Georgia, 30309. *Qui Tam* Plaintiffs are informed and believe that LABCORP is the second largest clinical laboratory in the United States, with total annual revenue of more than $3 billion. *Qui Tam* Plaintiffs sue LABCORP both based on conduct of LABCORP itself and in LABCORP's capacity as successor by merger or consolidation to each of the following:

(a)     Dynacare, which LABCORP acquired on or about June 2002;

(b)     Dianon Systems, Inc., a Delaware corporation, which LABCORP acquired on or about January 2003;

LAW OFFICES
COTCHETT,
PITRE &
MCCARTHY

**COMPLAINT FOR MONEY DAMAGES AND CIVIL PENALTIES FOR VIOLATION OF THE GEORGIA FALSE MEDICAID CLAIMS ACT**

6

Page A-10

1     (c)  UroCor, a Delaware corporation, which was acquired by LABCORP,

2          through its acquisition of Dianon Systems, Inc., on or about January 2003;

3          and

4     (d)  MDS Labs GA, which LABCORP acquired on or about April 2004.

5    20.  Defendant LABORATORY CORPORATION OF AMERICA HOLDINGS, f/k/a

6 National Health Laboratories Holdings, Inc. (NYSE: LH; Control No. K519813) is a Delaware

7 Corporation with its principal place of business in Burlington, North Carolina. *Qui Tam*

8 Plaintiffs are informed and believe, and thereupon allege, that LABCORP is a wholly-owned

9 subsidiary of LABORATORY CORPORATION OF AMERICA HOLDINGS, and that

10 LABORATORY CORPORATION OF AMERICA HOLDINGS determined one or more of the

11 fee schedules pursuant to which LABCORP offered discounted rates to non-Medicaid customers.

12    21.  Defendant SPECIALTY LABORATORIES, INC., f/k/a Clinical Immunology

13 Laboratories, Inc. (NYSE: SP) ("SPECIALTY") is a California corporation whose principal

14 place of business is at 7111 Fairway Drive, Suite 400, Palm Beach Gardens, Florida 33418.

15    22.  *Qui Tam* Plaintiffs are ignorant of the names and capacities of the Defendants

16 sued herein as DOES 10 through 100, inclusive, and therefore sues such Defendants by fictitious

17 names. *Qui Tam* Plaintiffs will amend this complaint to allege the true names and capacities of

18 the fictitiously named Defendants once ascertained. *Qui Tam* Plaintiffs are informed and believe

19 that Defendants Does 10 through 100, inclusive, are in some manner responsible for the actions

20 alleged herein.

21 **IV.  THE COMMERCIAL LABORATORY BUSINESS**

22    23.  Defendants QUEST, LABCORP, and SPECIALTY are commercial reference

23 laboratories. Commercial reference laboratories perform clinical laboratory services, which

24 entail analyses of human blood, urine, stool, and other body specimens to assist physicians in

25 diagnosing human disease and monitoring treatment. Two types of laboratories generally

26 perform clinical laboratory services. Hospital laboratories are primarily concerned with inpatient

27 testing. Commercial reference laboratories primarily provide outpatient testing for physician

28 offices and/or esoteric testing for hospitals and other laboratories.

LAW OFFICES
COTCHETT,
PITRE &
MCCARTHY

**COMPLAINT FOR MONEY DAMAGES AND CIVIL PENALTIES FOR VIOLATION OF THE
GEORGIA FALSE MEDICAID CLAIMS ACT**

7

24.     Commercial reference laboratories, including Defendants, perform clinical laboratory services for patients covered under Georgia's Medicaid program, which is administered in part by the Division.  Commercial reference laboratories obtain requests for clinical tests from physicians and hospitals.  When these tests are eligible for Medicaid reimbursement, Defendants submit electronic or paper invoices directly to the Division for Medicaid reimbursement, identifying the tests by a uniform Current Procedure Technology ("CPT") code.  *Qui Tam* Plaintiffs are informed and believe that those invoices are stored in electronic form on computer hard drives and other storage devices maintained by Defendants and the Division.  Defendants are required by their Medicaid provider agreements to retain these records for at least five years.

25.     The commercial reference laboratory market is extremely competitive.  Since at least the early 1990s, it has been common industry practice to offer and provide deeply discounted fees for laboratory tests billed directly to physicians, independent physician associations ("IPAs"), group purchasing organizations ("GPOs"), health maintenance organizations, hospitals and clinics.  Commercial reference laboratories offer those discounts to induce their customers to use a single commercial reference laboratory for the majority or all of their clinical testing needs.  The discounted fees can be so low that they do not cover the laboratory's costs.  Therefore, the laboratory relies on higher paying, "pull through" Medicaid and other referrals from those customers to operate at a profit.  Despite state regulations mandating that Medicaid receive the commercial reference laboratories' *lowest* fees, Defendants have treated Medicaid referrals in much the same way as other "pull through" business.

26.     *Qui Tam* Plaintiffs are informed and believe that Defendants depended, and continue to depend, on referrals to Defendants of large volumes of Medicaid and other testing business to cover the losses they would otherwise sustain in offering deeply discounted testing services.  By offering those deeply discounted rates, Defendants have erected a nearly insurmountable "loss leader" barrier to entry into the subject market, in that for a significant part of the market, any would-be competitor can only attract new business by offering comparably discounted services, which cannot be performed at a profit.

LAW OFFICES
COTCHETT,
PITRE &
MCCARTHY

**COMPLAINT FOR MONEY DAMAGES AND CIVIL PENALTIES FOR VIOLATION OF THE GEORGIA FALSE MEDICAID CLAIMS ACT**

8

27.     This is not the first time that clinical laboratory billing practices have come under scrutiny.  During the 1990's, the United States government obtained hundreds of millions of dollars in the "Operation Labscam" probe – including $182 million from LABCORP and $119 million from QUEST.  Then, the laboratories' fraud on the public took the form of billing Medicare for unnecessary tests.  Industry-wide fraudulent practices persisted even in the face of that widespread probe.

28.     QUEST's checkered history provides but one example of those undeterred fraudulent practices.  In 1996, the company paid an $11 million fine to settle charges that whenever a physician ordered a automated hemogram ("CBC") – the most commonly ordered laboratory test – QUEST routinely billed Medicare and other government insurance programs for additional, unnecessary tests.  Two years later, QUEST paid an additional $6.8 million for allegedly billing Medicare for unordered tests.  QUEST paid a further $15 million settlement later that year.  In 2001, QUEST paid yet another $13.1 million penalty for unnecessary tests billed by a company QUEST had acquired.  In 2003, the Attorney General of the State of New York ordered QUEST to cease double-billing for tests.  A U.S. Attorneys' investigation into billings for unnecessary, unordered tests performed by QUEST resulted in an $11.35 settlement in March 2004.  By the end of that year, QUEST was again under scrutiny for practices relating to tests on dialysis patients.

29.     In this instance, Defendants' practices are independently unlawful as kickback schemes, strictly prohibited by Federal health care programs pursuant to 42 U.S.C. § 1320a-7b(b)(2)(A).  Defendants provided kickbacks in the form of deeply discounted private rates to draw in large volumes of "pull through" Medicaid and other referrals.  *Qui Tam* Plaintiffs are informed and believe that at all times relevant hereto, each Defendant knew that federal law prohibited their giving or receiving kickbacks.  The discounts and overcharges described herein are all the more egregious because they have been accomplished through knowing violations of those long-established federal anti-kickback laws.

///

///

LAW OFFICES
COTCHETT,
PITRE &
MCCARTHY

COMPLAINT FOR MONEY DAMAGES AND CIVIL PENALTIES FOR VIOLATION OF THE
GEORGIA FALSE MEDICAID CLAIMS ACT

9

Page A-13

**V.  DEFENDANTS VIOLATED THE FALSE MEDICAID CLAIMS ACT BY FAILING TO BILL THE DIVISION FOR MEDICAID REIMBURSEMENT AT THEIR LOWEST RATES**

30.  Under Division of Medical Assistance regulations, Defendants were required to provide their services to Medicaid patients at their most favorable rates:

> As required by Divisional policy, providers *must* bill the Division their usual and customary fees. *"Usual and customary" means the lowest rate charged to private patients, other third party payers and insurance carriers, health maintenance organizations or other members of the general public for comparable services.* The lowest rate includes any special price or discounts offered to such patients.  Providers must not change their fees to the upper limits in this schedule, even if these fees are higher than the maximum allowable payments for the services rendered.

Schedule of Maximum Allowable Payments for clinical Laboratory and Anatomical Pathology Services (emphasis added; given force of law by OCGA § 49-4-142).  Charges in excess of the maximum allowable fees are subject to recovery under both OCGA § 49-4-146.1, and the Georgia False Medicaid Claims Act (OCGA § 49-4-168 *et seq.*).

31.  Defendants submitted electronic or paper invoices for clinical laboratory tests directly to the Division for Medicaid reimbursement.  Defendants did not apply the discounts alleged above when submitting invoices directly to the Division for reimbursement.  Defendants, and each of them, instead submitted invoices for an amount that equaled or exceeded the maximum Medicaid reimbursement rate for each test performed.

32.  In submitting those claims for payment to Medicaid, Defendants represented that their fees complied with state Medicaid regulations.  Those representations were false, in that Defendants were in fact charging far lower fees to other customers.

33.  At all times relevant hereto, each Defendant "knew" or acted "knowingly," as those terms are defined in OCGA § 49-4-168(2), in making, presenting, or submitting false claims.  In that respect, each Defendant acted:

(a)  With actual knowledge of the information; or

(b)  In deliberate ignorance of the truth or falsity of the information; or

(c)  With reckless disregard of the truth or falsity of the information.

34.    At all times relevant hereto, each Defendant presented false claims, as defined in OCGA § 49-4-168.1, by:

(a)    Knowingly presenting false claims to the Division for payment or approval of claims for Medicaid reimbursement; and/or,

(b)    Knowingly making and using false statements and/or records for the purpose of obtaining Division approval of false claims for Medicaid reimbursement.

35.    *Qui Tam* Plaintiffs are informed and believe that at all times relevant hereto, each Defendant submitted electronic or paper invoices to the Division for clinical laboratory testing that reflected fees higher than those charged to other clients and the general public.

36.    *Qui Tam* Plaintiffs are informed and believe that at all times relevant hereto, each Defendant knew that its conduct would cause the Division to pay claims for the clinical laboratory tests based on fees higher than those charged to other clients and the general public.

37.    As a result of the foregoing, each claim for payment for each test that violated Division regulations, was a false claim in violation of Georgia's False Medicaid Claims Act (OGCA § 49-4-168, *et seq.*).

38.    The State has been damaged by Defendants' false claims in an amount that is presently unknown, but believed to be in the hundreds of millions of dollars.

## VI.    MEDICAID OVERCHARGES BY QUEST

39.    On or after November 1, 1997, QUEST has offered private entities lower rates for its testing services than rates billed to the Division.

40.    During the period between 2001 and 2004, QUEST instructed its sales personnel that QUEST offered discounted fees on laboratory tests to private physicians, clinics, hospitals, IPA's, GPO's and other health care providers, in order to capture their "pull through," *i.e.*, higher paying Medicaid and other referrals. *Qui Tam* Plaintiffs are informed and believe that QUEST, in fact, counted on Medicaid and other "pull through" revenue to cover losses on tests for which it charged others deeply discounted fees, in that it could not otherwise afford to offer them.

LAW OFFICES
COTCHETT,
PITRE &
MCCARTHY

**COMPLAINT FOR MONEY DAMAGES AND CIVIL PENALTIES FOR VIOLATION OF THE GEORGIA FALSE MEDICAID CLAIMS ACT**    11

41.     QUEST presently offers deeply discounted fees to members of Premier, Inc.'s and Council Connections' group purchasing programs.  Those volume-based fees are well below maximum Medicaid reimbursement rates.

42.     QUEST fee schedules dating from January 3, 2001 to the present and reflecting prices offered to non-Medicaid purchasers of QUEST clinical laboratory services further confirm that QUEST has charged other purchasers of its services fees well below those charged to Division for Medicaid reimbursed tests.

43.     The following chart, which compiles fees published in QUEST's private fee schedules and compares them with Medicaid's fee schedule, shows QUEST's non-Medicaid fees to be well below current maximum Medicaid fees.

| Test Name | Quest Test No. | CPT | Medicaid Fee | Quest Fee | Per Test Overcharge |
|---|---|---|---|---|---|
| CBC w Diff & Platelets | 35023 | 85025 | $9.77 | $1.43 | 583% |
| Lipid Panel | | 80061 | $16.85 | $4.75 | 255% |
| Comp. Metabolic Panel | | 80053 | $13.29 | $1.90 | 599% |
| TSH (ultra sensitive) | | 84443 | $21.12 | $5.70 | 271% |
| Chlamydia Amplified DNA probe | 56850 | 87491 | $24.67 | $11.40 | 116% |
| Hemoglobin (A1C) | | 83036 | $12.20 | $4.51 | 171% |
| Culture, Urine | | 87086 | $10.15 | $4.75 | 114% |
| Urinalysis w/micro | | 81001 | $3.99 | $1.43 | 179% |
| PSA (Ultra-sensitive) | | 84153 | $23.13 | $5.86 | 295% |
| Basic Metabolic | | 80048 | $10.65 | $1.66 | 542% |
| Hepatic Function Panel | | 80076 | $10.28 | $1.57 | 555% |
| Sed Rate | | 85652 | $3.39 | $1.43 | 137% |
| Antibiotic Susceptibility (Disc) | | 87184 | $8.67 | $2.85 | 204% |
| Hepatitis B Surface Ag. | | 87340 | $12.99 | $4.75 | 173% |
| Urinalysis | | 81003 | $2.89 | $1.43 | 102% |
| Uric Acid | | 84550 | $5.68 | $1.65 | 244% |
| Iron | | 83540 | $8.15 | $1.43 | 470% |
| Glucose, Fasting | | 82947 | $4.93 | $1.19 | 314% |

LAW OFFICES
COTCHETT,
PITRE &
MCCARTHY

**COMPLAINT FOR MONEY DAMAGES AND CIVIL PENALTIES FOR VIOLATION OF THE GEORGIA FALSE MEDICAID CLAIMS ACT**                    12

| Test Name | Quest Test No. | CPT | Medicaid Fee | Quest Fee | Per Test Overcharge |
|---|---|---|---|---|---|
| T4, Total (Thyroxine) | | 84436 | $8.65 | $2.38 | 263% |
| Culture, Group B. Strep | | 87081 | $8.33 | $2.38 | 250% |
| Ferritin | | 82728 | $17.13 | $2.85 | 501% |
| GGT | | 82977 | $6.35 | $2.58 | 146% |
| SGPT (ALT) | | 84460 | $6.35 | $2.85 | 123% |
| SGOT (AST) | | 84450 | $6.35 | $2.85 | 123% |
| Glu., Gest.  Screen | | 82947 | $4.93 | $2.00 | 147% |
| Culture, Genital | | 87070 | $10.83 | $4.75 | 128% |
| Estradiol | | 82670 | $35.14 | $14.25 | 147% |
| Rubella IgG | | 86762 | $14.63 | $2.96 | 394% |
| Hepatitis C Antibody | | 86803 | $17.95 | $7.60 | 136% |
| Rh | | 86901 | $14.51 | $2.30 | 531% |
| RBC Antibody Screen | | 86850 | $15.23 | $3.17 | 380% |
| Hepatitis B Surface Ab. | | 86706 | $13.51 | $4.75 | 184% |
| Beta-HCG (Quant) | | 84702 | $8.07 | $5.15 | 57% |
| FSH | | 83001 | $23.37 | $8.55 | 173% |
| Free Testosterone | | 84402 | $32.01 | $7.12 | 350% |
| Progesterone | | 84144 | $25.61 | $14.75 | 74% |

44.     On information and belief, QUEST has also offered and collected lower rates than the Division maximum Medicaid reimbursement rate for other tests within the 80000 to 89999 range of CPT codes.

## VII.   MEDICAID OVERCHARGES BY LABCORP

45.     On or after November 1, 1997, LABCORP has billed the Division for laboratory tests at rates that exceed the maximum amounts provided under the Medicaid fee schedule.

46.     Among other things, LABCORP has provided and continues to provide volume-based discounts to members of the Premier, Inc. purchasing collective based on the volume of tests ordered.  Those discounted fees are below the fees LABCORP has billed to Medicaid.



LAW OFFICES
COTCHETT,
PITRE &
MCCARTHY

COMPLAINT FOR MONEY DAMAGES AND CIVIL PENALTIES FOR VIOLATION OF THE
GEORGIA FALSE MEDICAID CLAIMS ACT                                                    13

47.     Specifically, when compared with the August 13, 2002 LABCORP/Laboratory Corporation of America Reference Testing Services Tier 1, Tier 2 and Tier 3 Contract Pricing list for their Premier, Inc. contract for the period beginning July 1, 2002 and ending March 31, 2004, a LABCORP internally generated July 31, 2002 computer printout shows that LABCORP billed Medicaid fees far in excess of those charged to Premier, Inc. members.  The chart summarizes those differences.

| Test Name | LabCorp Test No. | CPT Code | Medicaid Fee | LabCorp Lowest Fee | Per Test Overcharge |
|---|---|---|---|---|---|
| CBC w Diff & Platelets | 5009 | 85025 | $9.77 | $3.62 | 170% |
| Lipid Panel | 303756 | 80061 | $16.85 | $8.51 | 98% |
| Comp. Metabolic Panel | 322000 | 80053 | $13.29 | $5.75 | 131% |
| TSH (ultra sensitive) | 4259 | 84443 | $21.12 | $6.44 | 228% |
| Hemoglobin (A1C) | 1453 | 83036 | $12.20 | $5.52 | 121% |
| Culture, Urine | 8847 | 87088 | $10.18 | $7.36 | 38% |
| Urinalysis w/micro | 3772 | 81001 | $4.37 | $3.97 | 10% |
| PSA (Ultra-sensitive) | 480772 | 84153 | $23.13 | $5.52 | 319% |
| Basic Metabolic | 322758 | 80048 | $10.65 | $5.00 | 113% |
| Hepatic Function Panel | 322755 | 80076 | $10.28 | $4.95 | 108% |
| Hepatitis B Surface Ag. | 6510 | 87340 | $12.99 | $3.68 | 253% |
| T4, Total (Thyroxine) & TSH | 24026 | 84436 & 84443 | $8.65 + $21.12 | $11.04 | 170% |
| Ferritin | 4598 | 82728 | $17.13 | $3.68 | 365% |
| Testosterone, Total | 4226 | 84403 | $32.47 | $7.36 | 341% |
| Estradiol | 4515 | 82670 | $35.14 | $15.64 | 125% |
| Hepatitis C Antibody | 14608 | 86803 | $17.95 | $6.44 | 179% |
| Hepatitis B Surface Ab. | 6395 | 86706 | $13.51 | $3.68 | 267% |
| FSH | 4309 | 83001 | $23.37 | $7.36 | 218% |
| Free Testosterone | 144980 | 84402 | $32.01 | $27.60 | 16% |
| Progesterone | 4317 | 84144 | $25.61 | $10.12 | 153% |

LAW OFFICES
COTCHETT,
PITRE &
MCCARTHY

**COMPLAINT FOR MONEY DAMAGES AND CIVIL PENALTIES FOR VIOLATION OF THE GEORGIA FALSE MEDICAID CLAIMS ACT**                                          14

48.     On information and belief, LABCORP has also offered and collected lower rates than the Division maximum Medicaid reimbursement rate for other tests within the 80000 to 89999 range of CPT codes.

49.     In addition, current LABCORP fee schedules show that LABCORP continues to charge other customers rates lower than Medicaid maximum rates.

## VIII.   MEDICAID OVERCHARGES BY SPECIALTY

50.     On or after November 1, 1997, SPECIALTY has offered private entities lower rates for its testing services than rates billed to Medicaid.

51.     SPECIALTY has charged Hunter Labs lower rates than maximum Medicaid rates.

52.     Two former SPECIALTY salespersons have confirmed to *Qui Tam* Plaintiffs that for at least the past ten years, SPECIALTY has billed Medicaid its list prices.  One has stated that SPECIALTY calculated sales representatives' commissions based on the lower Medicaid fee schedule reimbursement rates, *i.e.*, rates Medicaid paid SPECIALTY.

53.     SPECIALTY fee schedules dating from 2004 to the present and reflecting prices offered to non-Medicaid purchasers of SPECIALTY clinical laboratory services further confirm that SPECIALTY has charged other purchasers of its services fees well below those charged to the Division for Medicaid reimbursed tests.

54.     The following chart, which compiles fees published in SPECIALTY's private fee schedules and compares them with Medicaid's fee schedule, shows SPECIALTY's non-Medicaid fees to be well below current maximum Medicaid fees.

| Test Name | Specialty Test No. | CPT Code | Medicaid Fee | Speciality Fee | Per Test Overcharge |
|---|---|---|---|---|---|
| Chl | 2927 | 87491 | $24.67 | $16.38 | 51% |
| DHEA-S | 3150 | 82627 | $27.96 | $15.02 | 86% |
| Estradiol | 3155 | 82670 | $35.14 | $23.43 | 50% |
| Ferritin | 3170 | 82728 | $17.13 | $10.69 | 60% |
| Free Testosterone | 3247 | 84402 | $32.01 | $16.38 | 95% |
| FSH | 3175 | 83001 | $23.37 | $10.05 | 133% |

LAW OFFICES
COTCHETT,
PITRE &
MCCARTHY

COMPLAINT FOR MONEY DAMAGES AND CIVIL PENALTIES FOR VIOLATION OF THE
GEORGIA FALSE MEDICAID CLAIMS ACT                                    15

| Test Name | Specialty Test No. | CPT Code | Medicaid Fee | Speciality Fee | Per Test Overcharge |
|---|---|---|---|---|---|
| fT3 | 3234 | 84481 | $21.30 | $16.31 | 31% |
| fT4 | 3228 | 84439 | $11.34 | $5.79 | 96% |
| GGT | 5302 | 82977 | $6.35 | $2.23 | 185% |
| Glucose, Fasting | 5301 | 82947 | $4.93 | $2.23 | 121% |
| Hemoglobin (A1C) | 4972 | 83036 | $12.20 | $6.37 | 91% |
| Hepatitis B Surface Ab. | 2453 | 86706 | $13.51 | $7.21 | 87% |
| Hepatitis B Surface Ag. | 2454 | 87340 | $12.99 | $7.21 | 80% |
| Hepatitis C Antibody | 2446 | 86803 | $17.95 | $10.47 | 71% |
| Iron | 3532 | 83540 | $8.15 | $2.23 | 265% |
| Progesterone | 3163 | 84144 | $25.61 | $12.42 | 106% |
| PSA (Ultra-sensitive) | 3546 | 84153 | $23.13 | $7.31 | 216% |
| Rubella IgG | 9416 | 86762 | $14.63 | $8.78 | 66% |
| SGOT (AST) | 1345 | 84450 | $6.35 | $2.23 | 185% |
| SGPT (ALT) | 1347 | 84460 | $6.35 | $2.23 | 185% |
| T4, Total (Thyroxine) | 3226 | 84436 | $8.65 | $4.37 | 98% |
| Testosterone, Total | 3244 | 84403 | $32.47 | $14.56 | 123% |
| TSH (ultra sensitive) | 3250 | 84443 | $21.12 | $4.65 | 354% |
| Uric Acid | 1310 | 84550 | $5.68 | $2.23 | 155% |
| Chlamydia Amplified DNA probe | 2925 | 87491 | $24.67 | $8.19 | 201% |

55.    On information and belief, SPECIALTY has also offered and collected lower rates than the Division maximum Medicaid reimbursement rate for other tests within the 80000 to 89999 range of CPT codes.

///

///

///

///

///

///

LAW OFFICES
COTCHETT,
PITRE &
MCCARTHY

## IX.   CAUSES OF ACTION

### FIRST CAUSE OF ACTION

#### (Against All Defendants)

#### Georgia False Medicaid Claims Act, Presenting False Claims

#### OCGA § 49-4-168.1(a)(1)

56.   Plaintiff incorporates herein by reference and realleges the allegations stated in Paragraphs 1 through 55, inclusive, of this Complaint.

57.   At all times relevant hereto, Defendants, and each of them, knowingly (as defined in OCGA § 49-4-168(2)) presented, or caused to be presented, claims for payment or approval in the form of invoices submitted to Medicaid that reflected prices higher than the maximum reimbursement rates allowed by law.  Specifically, Defendants, and each of them, submitted or caused to be submitted invoices for payment of Medicaid covered clinical laboratory tests at amounts grossly in excess of the amounts contemplated by law, resulting in great financial loss to the State.

58.   Defendants' conduct violated OCGA § 49-4-168.1(a)(1), and was a substantial factor in causing the State to sustain damages in an amount according to proof pursuant to OCGA § 49-4-168.1(a).

WHEREFORE, Plaintiff pray for judgment against Defendants, and each of them, as set forth below.

### SECOND CAUSE OF ACTION

#### (Against All Defendants)

#### Georgia False Medicaid Claims Act, Making or Using False Records or Statements

#### To Obtain Payment or Approval of False Claims

#### OCGA § 49-4-168.1(a)(2)

59.   Plaintiff incorporates herein by reference and realleges the allegations stated in Paragraphs 1 through 55, inclusive, of this Complaint.

60.   At all times relevant hereto, Defendants, and each of them, knowingly (as defined in defined in OCGA § 49-4-168(2)) made or used, or caused to be made or used, false records or

LAW OFFICES
COTCHETT,
PITRE &
MCCARTHY

**COMPLAINT FOR MONEY DAMAGES AND CIVIL PENALTIES FOR VIOLATION OF THE GEORGIA FALSE MEDICAID CLAIMS ACT**                                    17

1  statements to obtain payment or approval of false claims.  Specifically, Defendants billed the
2  Division at rates equal to or in excess of the maximum rates specified by the Medicaid rate schedule,
3  rather than the discounted rates offered to others.

4  61.  Defendants' conduct violated OCGA § 49-4-168.1(a)(2), and was a substantial factor
5  in causing the State to sustain damages in an amount according to proof pursuant to OCGA § 49-4-
6  168.1(a).

7  **X.      PRAYER FOR RELIEF**

8  WHEREFORE, Plaintiff prays judgment in its favor and against Defendants as follows:

9  1.  That judgment be entered in favor of plaintiff STATE OF GEORGIA *ex rel. Qui*
10  *Tam* Plaintiffs HUNTER LABORATORIES, LLC and CHRIS RIEDEL, and against Defendants
11  QUEST DIAGNOSTICS INCORPORATED, a Delaware corporation; QUEST DIAGNOSTICS
12  NICHOLS INSTITUTE, f/k/a QUEST DIAGNOSTICS, INC., a California corporation; QUEST
13  DIAGNOSTICS CLINICAL LABORATORIES, INC., a Delaware corporation; LABORATORY
14  CORPORATION OF AMERICA, a Delaware corporation; LABORATORY CORPORATION
15  OF AMERICA HOLDINGS, a Delaware corporation; SPECIALTY LABORATORIES, INC., a
16  California corporation, and each of them, for the amount of damages to the State arising from
17  overcharges on claims for their specified laboratory tests and all other tests as to which said
18  Defendants engaged in substantially similar misconduct:

19  a.  On the First Cause of Action (Georgia False Medicaid Claims Act; Presentation of
20  False Claims to Georgia (OCGA § 49-4-168.1(a)(1)), damages as provided by
21  OCGA § 49-4-168.1(a) in the amount of:

22  i.  Triple the amount of the State's damages;
23  ii.  Civil penalties of Eleven Thousand Dollars ($11,000.00) for each false
24  claim;
25  iii.  Recovery of costs, attorneys' fees and expenses pursuant to OCGA § 49-4-
26  168.2(i);
27  iv.  Such other and further relief as the Court deems just and proper;
28

LAW OFFICES
COTCHETT,
PITRE &
MCCARTHY

**COMPLAINT FOR MONEY DAMAGES AND CIVIL PENALTIES FOR VIOLATION OF THE
GEORGIA FALSE MEDICAID CLAIMS ACT**                                                              18

1       b.     On the Second Cause of Action (Georgia False Medicaid Claims Act; Causing

2             False Records or Statements To Be Made or Used To Get False Claims Paid or

3             Approved By Georgia (OCGA § 49-4-168.1(a)(2)), damages as provided by

4             OCGA § 49-4-168.1(a) in the amount of:

5              i.     Triple the amount of the State's damages;

6              ii.     Civil penalties of Eleven Thousand Dollars ($11,000.00) for each false

7                    claim;

8              iii.    Recovery of costs, attorneys' fees and expenses pursuant to OCGA § 49-4-

9                    168.2(i);

10             iv.    Such other and further relief as the Court deems just and proper.

11      2.     Further, the *Qui Tam* Plaintiffs, on their behalf, request that they receive such

12  maximum amount as permitted by law, of the proceeds of this action or settlement of this action

13  collected by the State, plus an amount for reasonable expenses incurred, plus reasonable

14  attorneys' fees and costs of this action. The *Qui Tam* Plaintiffs request that their percentage be

15  based upon the total value recovered, including any amounts received from individuals or entities

16  not parties to this action.

17  DATED: December 19, 2007.

18

19                 Timothy M. O'Brien (Georgia Bar No. 548714)
               **Levin, Papantonio, Thomas,**

20                 **Mitchell, Echsner & Proctor, PA**
               316 South Baylen Street, 6th Floor

21                 Pensacola, FL 32502
               Tel: (850) 435-7140

22                 Fax: (850) 436-6140

23                 Of Counsel:
               Niall P. McCarthy (*nmccarthy@cpmlegal.com*)

24                 Justin T. Berger (*jberger@cpmlegal.com*)
               **COTCHETT, PITRE & McCARTHY**

25                 San Francisco Airport Office Center
               840 Malcolm Road, Suite 200

26                 Burlingame, CA  94010
               (650) 697-6000

27

28                 *Attorneys for Qui Tam Plaintiffs*
               *HUNTER LABORATORIES, LLC and CHRIS RIEDEL*

LAW OFFICES
COTCHETT,
PITRE &
McCARTHY

**COMPLAINT FOR MONEY DAMAGES AND CIVIL PENALTIES FOR VIOLATION OF THE GEORGIA FALSE MEDICAID CLAIMS ACT**    19